UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL JANKOWSKI,<br><br>   Plaintiff,<br><br>v.<br><br>LOYOLA UNIVERSITY CHICAGO and MICHAEL BEHNAM,<br><br>   Defendants. | Case No.: 25-cv-07212<br><br>JURY TRIAL DEMANDED |

**COMPLAINT AT LAW**

Plaintiff, Michael Jankowski ("Plaintiff" or "Mr. Jankowski") by and through his attorneys, Fegan Scott LLC, and for his Complaint against Defendants Loyola University Chicago and Michael Behnam (collectively referred to as "Defendants") (all allegations made on information provided to counsel by Plaintiff), states as follows:

**I. NATURE OF THE CASE**

1. Mr. Jankowski brings this complaint for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1983, the Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA"), and Illinois law.

2. From July 2022 to September 2024, Plaintiff Michael Jankowski was employed as Executive Assistant to the Dean of the Quinlan School of Business at Loyola University Chicago ("Loyola"). Beginning on September 1, 2022, Mr. Jankowski was repeatedly subjected to a discriminatory and hostile work environment created by his immediate supervisor, the Dean of the Quinlan School of Business, Michael Behnam ("Behnam" or "Defendant"), which was known of

1

and fostered by Loyola. Among other things, Behnam began repeatedly berating Mr. Jankowski with inappropriate language and gestures based upon Mr. Jankowski's sexual orientation and age.

3. In February of 2023, as a result of Behnam's conduct, Mr. Jankowski made an official complaint to the Office of Equity and Compliance (hereinafter "OEC Complaint") based on sexual orientation discrimination, age discrimination and the hostile work environment he was suffering at the hands of Behnam. This OEC Complaint was supposed to remain confidential.

4. In the weeks following his confidential OEC Complaint, Mr. Jankowski noticed that Behnam's behavior and general attitude toward Mr. Jankowski began to improve.

5. Mr. Jankowski, believing that the discriminatory actions and commentary were of the past, dropped his formal OEC Complaint on February 23, 2023.

6. After withdrawing his OEC Complaint, Mr. Jankowski noticed Behnam immediately revert to his prior behavior, and the discriminatory comments and gestures began again.

7. Not only did Behnam's discriminatory conduct begin again, but, Loyola retaliated against Mr. Jankowski by demoting him and stripping him of multiple benefits, including the loss of those who directly reported to him, and he was written up twice for "bad behavior" for things that other similarly situated, straight, younger, and female employees would have been excused for.

## II. JURISDICTION AND VENUE

8. Jurisdiction for these causes of action is invoked by 28 U.S.C. §§ 1331 and 1343. Plaintiff's claims are authorized by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5 ("Title VII"), and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*.

9. This Court has supplemental jurisdiction over Plaintiff's state law claims (Intentional Infliction of Emotional Distress) pursuant to 28 U.S.C. § 1367.

10. Venue in this district is proper under 28 U.S.C. § 1391(a)(1), (2) and (3), and under the civil rights statute set out above, including 42 U.S.C. § 2000e-5(f).

### III. PARTIES

11. Plaintiff, Michael Jankowski, is a 64-year-old male, and a resident of Chicago, Cook County, Illinois. Mr. Jankowski was employed by Loyola University Chicago from July 11, 2022, through September 2024 as Executive Assistant to the Dean of the Quinlan School of Business at Loyola.

12. Defendant Loyola University Chicago is a private university located at 1032 W. Sheridan Rd., Chicago, Cook County, Illinois. Loyola employs thousands of men and women in the Chicago area, and throughout the State of Illinois. Loyola's Quinlan School of Business is fully funded by and under the direction of Loyola.

13. Defendant Michael Behnam is employed by Loyola University Chicago, and at all relevant times served as the Dean of the Quinlan School of Business at Loyola. Behnam was Mr. Jankowski's immediate supervisor beginning September 1, 2022, through Mr. Jankowski's resignation.

### IV. EXHAUSTION OF REMEDIES

14. Plaintiff Mr. Jankowski has exhausted his administrative remedies and complied with the statutory prerequisites to file this complaint.

15. On October 2, 2023, Mr. Jankowski filed a charge with the Equal Opportunity Commission ("EEOC") (EEOC NO.: 440-2023-06580) raising claims for sexual orientation

3

discrimination, fostering a hostile work environment, retaliation, age discrimination, and violations of the Americans with Disabilities Act of 1990.[1]

16. The EEOC issued a Notice of Right to Sue letter dated April 1, 2025, which was received by Plaintiff's counsel via the EEOC portal on April 1, 2025.

17. Mr. Jankowski timely brings this action against Defendants, Loyola University Chicago and Michael Behnam, to recover for damages that he suffered as a direct and proximate result of Loyola and Behnam's discriminatory practices.

V. BACKGROUND FACTS

18. Mr. Jankowski was hired by Loyola as the Executive Assistant to the Dean of the Quinlan School of Business on July 11, 2022, earning a modest salary.

19. As Executive Assistant, Mr. Jankowski was tasked with providing administrative and operational support to the Dean, including, but not limited to scheduling and maintaining the Dean's calendar, and collaborating with various persons within and outside of the Quinlan School of Business.

20. On September 1, 2022, Michael Behnam became the Dean of the Quinlan School of Business, and Mr. Jankowski's immediate supervisor.

21. Michael Behnam remained Mr. Jankowski's supervisor throughout Mr. Jankowski's employment with Loyola.

22. Throughout Mr. Jankowski's time directly reporting to Behnam, Behnam created a hostile work environment toward homosexual men in general, and Mr. Jankowski in particular.

23. Behnam repeatedly used stereotypical homosexual gestures and comments in Mr. Jankowski's presence, and in direct conversations with Mr. Jankowski.

---

[1] The 300th day fell on a Sunday, Mr. Jankowski timely filed his EEOC charge on Monday, October 2, 2023. *See* 29 C.F.R. § 1614.604(g).

4

24. In the winter of 2022, Mr. Jankowski complimented Behnam on a scarf he was wearing. In response, Behnam took one end of the scarf and tossed it over his shoulder, and he then used the same hand to mimic sweeping his hair back while simultaneously whipping his head up and to the side (behavior considered stereotypical homosexual mannerisms) and said "Well, thank you," in a feminine tone.

25. On at least two other occasions in early 2023, when Mr. Jankowski complimented Behnam on something he was wearing, Behnam responded by saying "thank you" with a coquettish facial expression and extending a limp wrist (again, stereotypical homosexual behavior).

26. On multiple occasions, while standing in front of Behnam's desk, Mr. Jankowski would also notice Behnam affix his eyes on Mr. Jankowski's crotch while communicating with him. Mr. Jankowski subsequently began bringing a legal pad in when communicating with Behnam so that he was able to diplomatically cover his crotch to avert Behnam's gaze elsewhere.

27. Behnam furthered his discriminatory conduct in making comments about his previous Executive Assistant, a woman, indicating that he liked working with her because she was obedient, just the way he likes his women. Mr. Jankowski interpreted this as Behnam preferring a female Executive Assistant to a male, specifically Mr. Jankowski.

28. While Behnam was constantly distant and disrespectful toward Mr. Jankowski, he did not treat the female administrative staff members with the same disrespect or disregard. Instead, Behnam went out of his way to befriend them and frequently engage them in small talk.

29. Behnam also repeatedly made discriminatory remarks regarding Mr. Jankowski's age.[2]

---

[2] Mr. Jankowski was 62 years-old when Behnam was hired as Dean of the Quinlan School of Business.

30. While Mr. Jankowski is older than Behnam, on multiple occasions, Behnam called Mr. Jankowski "good boy," interpreted by Mr. Jankowski as "dog-whistle" terminology. Mr. Jankowski requested that he stop using that verbiage, but Behnam continued to do so.

31. Behnam also continuously singled out and berated Mr. Jankowski for his inability to remember detailed facts, due to his "old age."

32. Mr. Jankowski developed a sensitivity to harsh overhead lighting in his office as he has grown older, and as such, would leave his office lights dim. Behnam required that Mr. Jankowski keep his office brighter because Mr. Jankowski "represents him," despite never reprimanding other Quinlan directors who have low lighting in their student-facing offices.[3]

33. In early February 2023, Mr. Jankowski was assisting Behnam in his measurements for regalia, and as Mr. Jankowski asked Behnam if he would feel more comfortable with someone else assisting, Behnam responded with "I'm not homophobic."

34. Mr. Jankowski, unable to look beyond the continued discriminatory gestures and comments, filed an OEC Complaint on February 10, 2023.

35. Mr. Jankowski's OEC Complaint was based on sexual orientation discrimination, age discrimination, and hostile work environment he suffered at the hands of Behnam.

36. While the OEC Complaint was to remain confidential, Mr. Jankowski believes that Behnam was made aware of the complaint as Behnam's treatment of Mr. Jankowski improved in the few weeks following submission of the OEC Complaint.

37. Behnam began treating Mr. Jankowski with kindness and began to stop by Mr. Jankowski's office after arriving in the morning to see how Mr. Jankowski was doing. Behnam

---

[3] Behnam did allow Mr. Jankowski to purchase desk lamps to provide lighting adequate to Behnam's standards, but still did not require others to brighten their offices.

further began showing Mr. Jankowski the same respect he showed other similarly situated, heterosexual males, and females.

38. Mr. Jankowski, mistakenly believing that things had improved with Behnam, retracted his OEC Complaint on February 23, 2023. This was, again, supposed to be confidential; however, Mr. Jankowski believes that Behnam was also made aware of this, as his attitude toward Mr. Jankowski reverted back to the same discriminatory remarks and gestures as before.

39. Mr. Jankowski's work environment became increasingly hostile following the end of February 2023, to the point that Mr. Jankowski would go home and wonder if he would be fired upon his return the next day.

40. Following his OEC Complaint and the retraction of the same in February 2023, Mr. Jankowski, who has previously received positive performance evaluations, began receiving evaluations from Behnam indicating that he needed improvement in nearly all of the evaluated criteria.

41. Further, Mr. Jankowski was stripped of his supervisory role of two administrative assistants, multiple responsibilities were transferred to other staff members, and he was subjected to a lowered limit on the credit card provided by Loyola, which he regularly used to schedule luncheons and make purchases for Behnam, as his job required.

42. Mr. Jankowski also received two warning letters after the withdrawal of his OEC Complaint, a three-day suspension without pay, and was placed on a performance improvement plan ("PIP"), as well as mandatory participation in psychological counseling.

43. Throughout his tenure as Executive Assistant to Dean Behnam, Mr. Jankowski was treated differently than other similarly situated, heterosexual males, and females, and was in fact damaged by Defendants' conduct, and Loyola's fostering of the same.

7

44. Mr. Jankowski was also the victim of a hostile work environment based on Behnam's intentional and outrageous conduct toward him.

45. Given that Mr. Jankowski filed (and then retracted) a complaint with Loyola's OEC, and then filed a Complainant Information Sheet with the Illinois Department of Human Rights ("IDHR") on May 19, 2023, and a charge with the EEOC on October 2, 2023, Loyola was aware of Behnam's discriminatory conduct.

46. Defendants clearly retaliated against Mr. Jankowski following the filing of his formal EEOC charge.

## VI. RESPONDEAT SUPERIOR LIABILITY

47. As set out above, Mr. Jankowski was the victim of unwelcome, offensive, severe and pervasive discriminatory conduct at the hands of Behnam, his immediate supervisor from September 1, 2022 through September 2024.

48. Although Mr. Jankowski made a formal complaint with the OEC, and Behnam's conduct improved to the point that Mr. Jankowski dropped that complaint, Behnam's conduct never fully ceased. Mr. Jankowski was provided no other option than to file a complaint with the IDHR and the EEOC.

49. As Behnam is an agent and employee of Loyola and serves in a supervisory role, Loyola is liable for his discriminatory conduct under the doctrine of *respondeat superior*.

## VII. CAUSES OF ACTION

### A. COUNT I
### Title VII – Hostile Work Environment
### (Against Defendant Loyola)

50. Plaintiff realleges and repeats each and every allegation set forth above as if fully realleged and set forth herein.

51. At all relevant times, Behnam was the Dean of the Quinlan School of Business at Loyola University Chicago, and Plaintiff's immediate supervisor from September 1, 2023, through September 2024.

52. At all relevant times, Behnam was an employee and agent of Loyola.

53. As described above, Behnam's conduct toward Plaintiff was unwelcome and occurred because of and based, at least in part, upon Plaintiff's sexual orientation and age.

54. Behnam's conduct occurred over several months and constitutes a continuing course of discrimination and abuse toward Plaintiff.

55. Behnam committed an unlawful employment practice by treating Plaintiff differently because of his sexual orientation and age, causing a change in the condition of Plaintiff's employment and subjecting him to a hostile work environment.

56. Plaintiff was subjected to a discriminatory environment that was both objectively and subjectively offensive, one that a reasonable person would find hostile, and one that Plaintiff did in fact perceive to be so.

57. As Behnam was Plaintiff's immediate supervisor, Loyola is vicariously liable for Behnam's conduct.

58. The conduct of Loyola had the purpose or effect of unreasonably interfering with Plaintiff's work performance.

59. The conduct of Loyola further fostered and created a hostile work environment.

60. Despite being fully aware of Behnam's discriminatory conduct, Loyola continued to maintain Behnam's supervisory role over Plaintiff.

61. Through its actions, Loyola fostered a workplace permeated with discriminatory conduct, ridicule and insult that was severe and regular enough to alter the conditions of Plaintiff's employment and create a hostile work environment.

62. Loyola has therefore denied Plaintiff his rights under Title VII of the Civil Rights Act of 1964 and he has suffered damages as a direct result of the conduct.

**WHEREFORE**, Plaintiff respectfully requests this Court grant the following relief:

A. Grant Plaintiff an award in excess of the jurisdictional minimums of this Court;

B. Grant Plaintiff appropriate injunctive relief, lost wages, liquidated damages, front pay, compensatory damages, punitive damages, pre- and post-judgment interest, and costs, including reasonable attorneys' fees and expert witness fees; and

C. Any and all other relief this Court deems equitable and just.

### B. COUNT II
### Title VII – Retaliation
### (Against Defendant Loyola)

63. Plaintiff realleges and repeats each and every allegation set forth above as if fully realleged and set forth herein.

64. At all relevant times, Plaintiff's immediate supervisor was Behnam.

65. At all relevant times, Behnam was an agent of Loyola, acting within the course and scope of his employment.

66. On February 10, 2023, Plaintiff made an OEC Complaint against Behnam for his inappropriate and discriminatory conduct based upon Plaintiff's sexual orientation and age.

67. Plaintiff was informed that any complaints made to the OEC would be provided to the person complained of, and Plaintiff requested that his complaint remain confidential, opting to go through channels that would not allow Behnam knowledge of the complaint.

68. In the weeks following Plaintiff's OEC Complaint, Behnam's treatment of Plaintiff greatly improved, and Plaintiff decided to withdraw his OEC Complaint.

69. After withdrawing his original OEC Complaint, Plaintiff believes that Behnam was told of the withdrawal, and the treatment of Plaintiff by Behnam reverted to what it was pre-complaint.

70. Plaintiff, who previously received positive performance reviews, began receiving reviews indicating he needed "improvement" in all areas. He also began to have job responsibilities stripped from him.

71. As Behnam was Plaintiff's immediate supervisor, Loyola is vicariously liable for Behnam's conduct.

72. Plaintiff continued to be subjected to disparate treatment and a hostile work environment at the hands of Loyola in retaliation for exercising his civil rights in making a complaint.

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

A. Grant Plaintiff an award in excess of the jurisdictional minimums of this Court;

B. Grant Plaintiff appropriate injunctive relief, lost wages, liquidated damages, front pay, compensatory damages, punitive damages, pre- and post-judgment interest and costs, including reasonable attorneys' fees and expert witness fees; and

C. Any and all other relief this Court deems equitable and just.

### C. COUNT III
### Age Discrimination in Violation of the Age
### Discrimination in Employment Act (ADEA) 29 U.S.C. § 621
### (Against Defendant Loyola)

73. Plaintiff realleges and repeats each and every allegation set forth above as if fully realleged and set forth herein.

74. At all relevant times, Behnam was Plaintiff's immediate supervisor.

75. At all relevant times, Behnam was an employee of Loyola acting within the course and scope of his employment.

76. The ADEA makes it unlawful for employers and their agents "to … discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

77. Section 4(a)(2) makes it unlawful for an employer to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age. 29 U.S.C. § 623(a)(2).

78. Plaintiff was between 62 and 63 years of age when Behnam made verbal comments regarding Plaintiff's age, including, but not limited to, comments about how Plaintiff was unable to recall details due to his "old age," and that Plaintiff was a "good boy."

79. Despite being in a position of authority over Plaintiff, as well as Plaintiff's junior, Behnam continued making discriminatory comments about Plaintiff's age.

80. Behnam's discriminatory comments were made within the course and scope of his employment with Loyola, and Loyola is vicariously liable.

81. Loyola's violations of the ADEA were intentional and willful.

**WHEREFORE**, Plaintiffs respectfully requests this Court grant the following relief:

A. Grant Plaintiff an award in excess of the jurisdictional minimums of this Court;

B. Grant Plaintiff appropriate injunctive relief, lost wages, liquidated damages, front pay, compensatory damages, punitive damages, pre- and post-judgment interest, and costs, including reasonable attorneys' fees; and

C. For any and all other relief this Court deems equitable and just.

## D. COUNT IV
### Intentional Infliction of Emotional Distress
### (Against Defendants Behnam and Loyola)

82. Plaintiff realleges and repeats each and every allegation set forth above as if fully realleged and set forth herein.

83. At all relevant times, Behnam was Plaintiff's immediate supervisor.

84. At all relevant times, Behnam was an agent of Loyola acting within the course and scope of his employment.

85. In a manner more fully described above, Behnam's discriminatory conduct toward Plaintiff constituted extreme and outrageous conduct.

86. As Behnam was Plaintiff's immediate supervisor, his actions were rooted in an abuse of power and authority.

87. Behnam's actions were undertaken with intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress with reckless disregard of that probability.

88. Behnam's actions were undertaken with malice, willfulness, and reckless indifference of Plaintiff's rights.

89. The discriminatory conduct described in this Count was undertaken by Behnam within the course and scope of his employment such that his employer, Loyola University, is liable for his actions.

90. As a direct and proximate result of this conduct, Plaintiff suffered injuries, including, but not limited to, severe emotional distress.

**WHEREFORE**, Plaintiff respectfully requests this Court grant the following relief:

    A. Grant Plaintiff an award in excess of the jurisdictional minimums of this Court;

B. Grant Plaintiff appropriate injunctive relief, lost wages, liquidated damages, front pay, compensatory damages, punitive damages, pre- and post-judgment interest, and costs, including reasonable attorneys' fees.

C. Any and all other relief this Court deems equitable and just.

## JURY TRIAL DEMANDED

91. Plaintiffs demand a trial by jury on all claims so triable under Federal Rule of Civil Procedure Rule 38(b).

DATED: June 27, 2025

Respectfully Submitted,

*/s/ Timothy A. Scott*
Timothy A. Scott
**Fegan Scott LLC**
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
(630) 273-2625
Tim@feganscott.com

Georgia Jaye Zacest (*pro hac forthcoming*)
**Fegan Scott LLC**
708 Main Street, 10th Floor
Houston, TX 77002
(830) 212-4042
Georgia@feganscott.com

*Attorneys for Plaintiff*